FILED

SEP - 4 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 2:13-mj-00316 |
| ) | |
| ALEX J. PEREZ, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Alex J. Perez operated a moped on board the Norfolk Naval Station in the early morning hours of July 12, 2013 when he was arrested by Norfolk Naval Base Police Corporal Larry Cooke for driving under the influence of alcohol ("DUI"). He was subsequently charged with DUI with a blood alcohol concentration of .18 grams per 210 liters of breath, second offense within less than five years, in violation of 18 U.S.C. §§ 7 and 13, assimilating Va. Code §§ 18.2-266 and 18.2-270, in Count One of a criminal information. The Defendant was also charged in Count Two with knowingly and unlawfully operating a motor vehicle in violation of license restrictions imposed after being convicted of DUI in violation of Va. Code § 18.2-272(A)(iv).

The Defendant waived his right to a jury trial and the case was tried before the Court on August 7, 2013. At the close of the Government's evidence, the Defendant moved for a judgment of acquittal pursuant to FED. R. CRIM. P. 29 on the grounds that the Government failed to prove that the roads on which the Defendant had traveled on his moped on board Norfolk

Naval Station were "public highways" pursuant to Va. Code § 18.2-266. The Court heard argument and took the motion under advisement. After the Defendant presented his evidence, he renewed his motion for judgment of acquittal. The Court dismissed Count Two of the criminal information and again took the motion under advisement with respect to Count One, and directed the parties to brief the issue as to whether the Norfolk Naval Station roads on which the Defendant traveled were "public highways."[1] The matter having now been fully briefed, the Court **DENIES** the Defendant's motion for judgment of acquittal.

## FINDINGS OF FACT

The facts of this case are largely undisputed. According to the evidence proffered at trial, in the early morning hours of July 12, 2013, Norfolk Naval Base Police Corporal Larry Cooke observed the Defendant operating a moped[2] without a helmet on Gilbert Street on board the Norfolk Naval Station. The Norfolk Naval Base is a federal military installation located on lands acquired for the use of and located within the special maritime and territorial jurisdiction of the United States in the Eastern District of Virginia. It is not open to the general public. The base is surrounded by fencing, and the only access to the base is through several barricaded gates manned by armed guards. Only those persons who are authorized may access the base, and these individuals include Department of Defense employees, their dependents, military retirees, authorized contractors, individuals who may be sponsored by those with authorized access, and individuals with authorized business on the base who have obtained a pass from the Pass and

---

[1] On August 16, 2013, the Defendant filed, and simultaneously docketed, his brief in support of his motion for judgment of acquittal titled "First Motion for Acquittal Pursuant to Rule 29." ECF No. 13. Then, on August 22, 2013, the Defendant filed an amended brief in support of his motion for judgment of acquittal titled "Amended Motion for Acquittal." ECF No. 14. The Government filed its opposition on August 23, 2013. ECF. No. 15. This order resolves the Defendant's original motion for judgment of acquittal made in open court and ECF Nos. 13 and 14.

[2] While Corporal Cooke described the vehicle as a "scooter," the evidence is undisputed that it was a "moped" as that term is defined in Va. Code § 46.2-100.

2

Identification Office. Hence, while a large population accesses the Norfolk Naval Station, general public access to the base is restricted.

After observing the Defendant wobbling on the vehicle, Corporal Cooke initiated a traffic stop near Dillingham Avenue and Bunker Hill Road. According to Corporal Cooke, as the Defendant got off his moped, he had trouble maintaining his balance, his eyes were bloodshot and watery, and he smelled of alcohol. The Defendant admitted to drinking several beers. Corporal Cooke administered a series of field sobriety tests which the Defendant could not successfully complete. He was subsequently arrested and transported to the police station, where he agreed to provide a breath sample. The breath sample was found to have a content of 0.18 grams of alcohol per 210 liters of breath. The Defendant was previously convicted of DUI on September 25, 2012 in Newport News General District Court.

## DISCUSSION

The Defendant bases his motion for judgment of acquittal on the contention that the roads on which he traveled on board Norfolk Naval Station when stopped for DUI were not "public highways," and therefore he could not have violated Va. Code § 18.2-266, as assimilated by 18 U.S.C. §§ 7 and 13. In pertinent part, Va. Code § 18.2-266 provides:

> It shall be unlawful for any person to drive or operate any motor vehicle, engine or train (i) while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test administered as provided in this article . . .
> For purposes of this article, the term "motor vehicle" includes mopeds, while operated on the public highways of this Commonwealth.

The Government opposes the Defendant's motion for judgment of acquittal and argues that Gilbert Street is a public highway as defined by the Code of Virginia, even though it is contained within Norfolk Naval Station with limited access to the general public.

To define terms applicable to Va. Code § 18.2-266, the Court refers to Va. Code § 46.2-100, the definitional section of the Motor Vehicle Code, as courts have done before. *See, e.g., United States v. Scott*, 188 F. App'x 213, No. 05-5100, 2006 WL 1867344, at * 1 (4th Cir. July 6, 2006) (per curiam) (referring to § 46.2-100 to define "highway" in DUI case); *Gallagher v. Commonwealth*, 139 S.E.2d 37, 39 (Va. 1964) (looking to the Motor Vehicle Code to define terms used in the DUI statute); *Rix v. Commonwealth*, 714 S.E.2d 561, 562 (Va. 2011) (relying on § 46.2-100's definition of "operator" in applying the DUI statute); *Enriquez v. Commonwealth*, 722 S.E.2d 252, 255 (Va. 2012) (turning again to the Motor Vehicle Code to define "operator" in DUI case); *Corey v. Commonwealth*, No. 0421-02-4, 2003 WL 22657993, at *3 (Va. Ct. App. Nov. 12, 2003) (utilizing the definition of "highway" and "moped" from § 46.2-100 in DUI case); *Commonwealth v. McConnell*, No. 05-127, 2005 WL 2417633, at *3 (Va. Cir. Ct. Sept. 29, 2005) (relying on § 46.2-100's definition of "operator" in DUI case).

The Defendant contends that he is entitled to an acquittal because the Government failed to prove that the roads on which he traveled on his moped, all located on board Naval Station Norfolk, were "public highways" as required to be established under the DUI statute, Va. Code § 18.2-266, because the general public does not have unrestricted access to the military installation. Relying on *Prillaman v. Commonwealth*, 100 S.E.2d 4, 8 (Va. 1957) and its progeny, the Defendant contends that a moped operator cannot violate Va. Code § 18.2-266 on board Norfolk Naval Station. While the Government agrees the DUI statute requires that a moped operator be traveling on a "public highway," it contends that the Norfolk Naval Station roads are "public highways" for the purposes of the DUI statute. Hence, the Defendant's motion succeeds or fails depending on whether the Norfolk Naval Station roads on which the Defendant

traveled are or are not "public highways" as that term is used in § 18.2-266.

Prior to July 1, 2006, Va. Code § 46.2-100 defined "highway," in relevant part to include "the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys . . . ." To determine whether a road constituted a "highway" in the Code of Virginia, courts looked to the nature of the way or place, and the degree of open access for purposes of vehicular travel by the public. *United States v. Smith*, 395 F.3d 516, 520 (4th Cir. 2005); *United States v. Adams*, 426 F.3d 730, 732 (4th Cir. 2005) (citing *Caplan v. Bogard*, 563 S.E.2d 719, 723 (2002) (quoting *Prillaman v. Commonwealth*, 100 S.E.2d 4, 8 (1957)) ("[T]he 'true test' of whether a 'way' is a highway is 'whether the way or place of whatever nature is open to the use of the public for purposes of vehicular travel.'")). Hence, Federal and State courts in Virginia consistently held that if the public had open access for vehicular travel, then the "way or place" of travel was a public highway.

In cases involving federal enclaves, this definition resulted in courts looking to whether the public had open access to the federal installation to determine whether certain laws could be enforced under the Assimilated Crimes Act ("ACA"), 18 U.S.C. §§ 7 and 13. *Compare United States v. Spencer*, 422 F. Supp. 2d 589 (E.D. Va. 2005) (determining that the road inside Ft. Belvoir was open to the public and therefore constituted a "highway") *and United States v. Scott*, 188 F. App'x 213, No. 05-5100, 2006 WL 1867344, at * 1 (4th Cir. July 6, 2006) (per curiam) (holding that the road within the main gate of Ft. Lee was open to the public and therefore constituted a "highway"); *with United States v. Smith*, 395 F.3d at 520 (finding that the road leading up to gate of CIA facility in Langley, Virginia was restricted to the public and therefore

not a "highway") *and United States v. Adams*, 426 F.3d at 732 (holding that the road inside Great Dismal Swamp Refuge was closed to all public travel, and therefore was not a "highway"). Under the definition of highway in effect prior to July 1, 2006, therefore, none of the roads on board Norfolk Naval Station would be considered "highways" because they are not open to the general public since access to the base is restricted.

However, in 2006 the Virginia General Assembly amended the definition of "highway" in the Motor Vehicle Code to include ways and places used for vehicular travel on federal property, so that the present day definition of "highway" in the Code of Virginia now reads:

> [T]he entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys, and, for law enforcement purposes, (i) the entire width between the boundary lines of all private roads or private streets that have been specifically designated "highways" by an ordinance adopted by the governing body of the country, city, or town in which such private roads or streets are located and *(ii) the entire width between the boundary lines of every way or place used for purposes of vehicular travel on any property owned, leased, or controlled by the United States government and located in the Commonwealth.*

Va. Code § 46.2-100 (emphasis added).[3] Hence, the Virginia General Assembly amended the definition of "highway" to include "every way or place," *i.e.*, all roads, "for purposes of vehicular travel" on property owned or controlled by the United States. Presumably, then, this definition would include Gilbert Street, Dillingham Avenue and Bunker Hill Road on the Norfolk Naval Station, because they each constitute a "way or place used for purposes of

---

[3] Indeed, the definition appears to have been amended by the General Assembly in response to prior rulings by the Fourth Circuit. *See* Tim McGlone, *Assembly to define where road ends for gov't lands*, Virginian-Pilot, Feb. 28, 2006, *available at* http://hamptonroads.com/2006/02/assembly-define-where-road-ends-govt-land, *last accessed Aug. 28, 2013* ("Military police and federal law enforcement officers would again be able to enforce certain traffic violations on or around government property, under a General Assembly proposal designed to redefine the word 'highway.' . . . An appeals court ruled in two cases last year that federal properties and their access roads are not 'public highways' as defined in Virginia law. As a result, federal judges have been forced to dismiss hundreds of traffic tickets, and military police have simply stopped issuing certain tickets. . . . The legislation was requested by the U.S. Attorney's Office for the Eastern District of Virginia . . . .").

6

vehicular travel on . . . property owned . . . by the United States."

Even in light of the 2006 definitional amendment, the Defendant asks the Court to find that Gilbert Street within Norfolk Naval Station is not a public highway, arguing that the term "public" used in § 18.2-266's language—"the term 'motor vehicle' includes mopeds, while operated on the *public* highways of this Commonwealth"—requires the Court to look to the *Prillaman* line of cases and determine whether the road in question is open to the general public for travel. The Court disagrees. The Defendant's interpretation would render the 2006 amendment to the definition of "highway" meaningless. The amendment specifically added roads on federal enclaves to the definition of highway. The roads on federal enclaves that already permitted access to the general public, like Ft. Lee (*United States v. Scott, supra*) and Ft. Belvoir (*United States v. Spencer, supra*), already qualified as "highways" under the first part of the definition in Va. Code § 46.2-100 ("[E]very way or place open to the use of the public for purposes of vehicular travel in the Commonwealth"). Therefore, for the 2006 amendment to have meaning and not constitute surplusage, it must apply to roads that in some respects limit access to the general public, otherwise this amendment adds nothing to the original highway definition. *See United States v. Campbell*, No. 1:08mj457, 2009 WL 853973, at *1 (E.D. Va. Mar. 25, 2009) ("[P]art (ii) of the definition, added in the 2006 amendment, now need be considered, if at all, only where public use has been limited by sign or otherwise."). The Defendant references Colonial Parkway and Fort Monroe National Monument as examples of roads covered by clause (ii) of the definition. ECF Doc. No. 14 at 12. However, those highways are already covered by the first, and original, portion of the definition, because they are "open to the use of the public for purposes of vehicular travel in the Commonwealth." Va. Code § 46.2-

7

100. Therefore, clause (ii) must be considered in the context of limited access roads on property owned or controlled by the federal government, as is the case here.

In effect, the Defendant seeks to differentiate the term "public highway" from the term "highway," as defined in Va. Code § 46.2-100. Specifically, the Defendant insists that Va. Code § 18.2-266 "requires proof that it is a *public* highway," and argues that because the Motor Vehicle Code does not provide a definition of "public highway," the Court must instead adopt the test from *Prillaman* and its progeny cited in order to give meaning to the term "public." The Court does not find this argument persuasive. First, the Court notes that equating "public highway" with "highway" is consistent with the expression of the General Assembly's intent in the Virginia Code section pertaining to Highways, Bridges and Ferries, wherein the General Assembly provided: "For the purpose of this article, 'public highway' means highway, road and street . . . ." Va. Code § 33.1-89(A).

More importantly, "public" in the term "public highway" has meaning when it refers to those people who have access to the road at issue, *i.e.*, the group of people who are authorized to access the base and use the road, and not necessarily the general public as a whole. *See United States v. Kiliz*, 694 F.2d 628, 630 (9th Cir. 1982) (finding that although the federal enclave at issue, the Puget Sound Naval Shipyard, was a restricted access facility, "[t]he relevant public in this case is the apparently large number of people who use the roadways of the shipyard daily."); *see also United States v. White*, 145 F. App'x 786, No. 05-3326, 2005 WL 2404534, at *3 (3d Cir. Sept. 30, 2005) (holding that the word "public" must be read contextually, and while "outside the federal enclave in the Commonwealth of Pennsylvania, 'the public' might mean 'the general public,' on the Army Depot the relevant public must be 'the people who have access to

the Army Depot.'") (citing *Kiliz*, 694 F.2d at 630). The courts in *Kiliz* and *White* read the word "public" in similar motor vehicle statutes contextually, and held that it applied to the group of people who have regular access to the federal enclave and its highways, and not the broader general public. In other words, when given the appropriate context, "public highway" is the way or place open to the use of the community for purposes of vehicular travel on any property owned, leased, or controlled by the United States government and located in the Commonwealth. Va. Code § 46.2-100; *Kiliz*, 694 F.2d at 630 ("Ballantine's Law Dictionary defines the adjective 'public' as 'belonging to the entire community.'").

This definition also accomplishes the purposes of the Assimilated Crimes Act ("ACA"), 18 U.S.C. §§ 7 and 13. "Courts have uniformly agreed that Congress enacted the ACA to provide a gap-filling criminal code for federal reservations, to conform the law governing federal reservations to the laws of the surrounding jurisdiction, and to give those living within a federal reservation the same protections afforded those living outside the federal reservation." *United States v. Daniels*, 471 F. Supp. 2d 634, 639-40 (E.D. Va. 2007) (citing *United States v. Minger*, 976 F.2d 185, 187 (4th Cir. 1992) (citing *Kiliz*, 694 F.2d at 629)). As the Government argues, "it would render the ACA and its conformity policy meaningless" if the Defendant could drive his moped under the influence on Gilbert Street without risk of criminal prosecution, while such a risk would exist less than a mile away on Hampton Boulevard. ECF Doc. No. 15 at 10 (citing *Kiliz*, 694 F.2d at 632). Most importantly, the people who live and work around Gilbert Street within Norfolk Naval Station should be afforded the same protections of law against drunk drivers, including those on mopeds, as those individuals who live and work outside Norfolk Naval Station around Hampton Boulevard.

No such case with this precise factual context has previously been decided by a court after the 2006 amendment. In the cases that followed the amendment, courts relied on the first prong of the highway definition to find that the roads at issue were highways because they were open to the use of the general public and access was not limited. Consequently, those cases are not germane to this analysis. *See United States v. Hill*, 473 F.3d 112, 117 (4th Cir. 2007) ("In sum, we hold the district court's finding that the stretch of Nider Boulevard between Gate 4 and Shore Drive [and outside the Base's fencing and guard gates] was open to the use of the public for purposes of vehicular travel on the day of Hill's charged conduct was not clearly erroneous."); *United States v. Scott, supra*, at *1-2 ("Here, members of the public are free to drive on Fort Lee's roads, provided they meet the conditions posted on the roadway signs prior to entry."); *United States v. Daniels*, 471 F. Supp. 2d at 637 ("Although the Quantico Base Commander retains the authority to restrict access in the best interest of the government and has issued orders requiring registration for public access, the standing orders in evidence allow the public to drive on Fuller Road whether or not they have business on the base."). While those cases concerned federal installations that possessed the authority to limit access to the general public but in fact did not do so, the facts here are distinguishable because Norfolk Naval Station not only possesses the authority to limit access to the general public, but it exercises that authority regularly without interruption. By applying the second prong of the definition to the case at bar, the Court gives effect to the General Assembly's 2006 amendment and to the ACA.

This outcome is proper because in October 2005, after finding that the definition of "highway" did not include certain federal lands, the Fourth Circuit noted that if the statute needed clarification, such change was within the province of the General Assembly, and not the

judiciary. *United States v. Adams*, 426 F.3d 730, 732-33 (4th Cir. 2005) ("Having now confronted on more than one occasion the question of whether a particular road comes within Virginia's definition of 'highway,' we understand the difficulties that attend interpretation of Va. Code § 46.2 and the consequent uncertainties that result from its attempted application. Our responsibility as a court and as a federal court, however, is limited to interpreting, to the best of our ability, the statute as it was enacted and as it has been construed by the courts of Virginia. If the need exists for changes in the reach or clarity of the statute, that need is properly addressed to the legislature of the Commonwealth."). Shortly thereafter, the General Assembly amended Va. Code § 46.2-100 to include clause (ii), which applies to the facts presented to the Court at trial.

## CONCLUSION

Therefore, after hearing and considering the proffered evidence at trial, the argument of counsel and the briefs on this issue, the Court **FINDS** that the roads on which the Defendant had traveled on his moped on board Norfolk Naval Station were "public highways" pursuant to Va. Code § 18.2-266. Accordingly, the Defendant's motion for judgment of acquittal as to Count One is **DENIED**.

## ORDER

IT IS HEREBY **ORDERED, ADJUDGED, AND DECREED** that Defendant Alex J. Perez's Motion for Judgment of Acquittal pursuant to FED. R. CRIM. P. 29 is **DENIED**.

It is so **ORDERED**.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
September 4, 2013